STEVEN T. GEBELIN (SBN 261507)
steven@syversonlaw.com
SYVERSON, LESOWITZ & GEBELIN LLP
8383 Wilshire Blvd., Suite 520
Beverly Hills, CA 90211
Telephone: (310) 341-3072
Facsimile: (310) 341-3070

Attorneys for Defendant Matthew Price

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISON

| | |
|---|---|
| CHARIF KAZAL; TONY KAZAL; ADAM KAZAL, and KARL KAZAL,<br><br>    Plaintiffs,<br><br>  v.<br><br>MATTHEW PRICE,<br><br>    Defendant. | **CASE NO.: 2:18-cv-08655 R(Ex)**<br>Transferred from M.D. Florida: Oct. 11, 2018<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Date: February 25, 2019<br>Time: 10:00 a.m.<br>Ctrm: 880 |

## I. Introduction

Defendant Matthew Price ("Price") respectfully opposes the untimely and futile attempt of Plaintiffs Charif Kazal, Tony Kazal, Adam Kazal, and Karl Kazal (collectively "Plaintiffs") to expand the scope of their meritless and harassing lawsuit against him arising out of his publication of www.charifkazal.com, www.kazalfamilytruth.com, www.karlkazal.com, www.adamkazal.com, and www.tonykazal.com (the "Websites") that re-published multiple news articles from Australian media and an Australian government report regarding Plaintiffs' and their dubious business dealings. While Plaintiffs' claims against Price are themselves a meritless SLAPP, they now seek to expand the scope of their harassment of Price and his former employer, Thunder Studios, Inc. ("Thunder Studios") by belatedly drawing in additional individuals as defendants. Specifically, Plaintiffs seek leave to plead facts in order to name as defendants Ryan Wells, Michael Hatch, and Paul Kolesa (the "New Defendants"), each of which are alleged to have been employed by Thunder Studios at all relevant times. Proposed First Amended Complaint ("FAC') [Dkt. No. 46-3] at ¶¶ 25-27.

In this motion to amend, filed January 16, 2019, on a case initially filed in December of 2017, with claims based on allegedly defamatory content appearing on Websites prior to the filing of the complaint, Plaintiffs now seek to add new parties Plaintiffs admit were known to them <u>at least</u> since receiving discovery in May of 2018 (but should have been known as early as 2016) on meritless SLAPP claims that are well past the applicable statute of limitations under the Uniform Single Publication Act. *See, e.g. Strick v. Superior Court*, 143 Cal. App. 3d 916, 925 (Ct. App. 1983) (where "gist of all [Plaintiffs'] causes of action is based on the contents of the mass publication of an article", Civil Code section 3425.3 applies the one-year libel statute of limitations to all tort claims). As a result, the court should deny the motion for leave to amend as futile. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008).

## II. Facts

### A. Prior Cases.

Although this is but one of many lawsuits involving Plaintiffs related to Price's former boss at Thunder Studios, Rodric David[1], this is the third case in which Price has been personally made a party by Plaintiffs over the same Websites.

First, in a 2016 California state court action based on the Websites' publication (the "California Action"[2]), Plaintiff Charif Kazal conducted discovery to uncover the identify of "Doe" defendants involved with the Websites. Gebelin Decl. at ¶ 2. After subpoenaing information from Dreamhost, Kazal named both Price and proposed New Defendant Ryan Wells as defendants in that action, as well as their (then) employer Thunder Studios and its CEO Rodric David ("David"). *Id*. at ¶¶ 2, 4, Ex. 3. Mr. Kazal's attorney further communicated with proposed New Defendant Paul Kolesa in 2016 regarding the Websites and Mr. Kolesa's acting in response to DMCA takedown requests sent on David's behalf to Plaintiffs. *Id*. at Ex. 3. Thunder Studios and David filed an anti-SLAPP motion in the California action prior to Price or Wells being served, and Plaintiffs' counsel dismissed the California Action in November 2017, shortly before a scheduled hearing on the anti-SLAPP motion. *Id*. at ¶ 3, 5, Ex. 2.

Thereafter, in late 2017, Plaintiff Adam Kazal filed an application to take discovery from Price regarding the Websites in support of a foreign proceeding[3], (the "Discovery Action"). Gebelin Decl. ¶ 7. In the Discovery Action, over Price's objection, Adam Kazal was granted the ability to take Price's deposition on November 9, 2017, questioning him about the development and publication of the

---

[1] Among such suits is *Thunder Studios, Inc. v. Kazal, et al.*, United States District Court for the Central District of California, Case Number 2:17-cv-00871-AB-SS (the "California Federal Action"), arising out of claims that Plaintiffs infringed the copyrights of Thunder Studios and harassed David, including though publications such as kazalfamilystory.com and Plaintiffs' respective Twitter accounts. Declaration of Steven T. Gebelin ("Gebelin Decl.") at ¶ 6, Ex. 4.

[2] *Kazal v. Wells, et. al*, Superior Court of the State of California, County of Los Angeles, Case No. SC126477.

[3] *Adam Kazal v. Matthew Price*, U.S.D.C. for M.D. Fla. Case No. 8:17-cv-02620-VMC-JSS.

1  Websites.  Thereafter, Plaintiffs filed this action in December 2017, citing to and
2  attaching the deposition taken in the Discovery Action, and the naming Price alone
3  as the sole defendant responsible for various torts arising out of the allegedly
4  "defamatory" statements on the Websites. [Dkt. No. 1 (the "Complaint")].

    B.   Procedural History.

6    The original complaint in this action makes claims based on publications on
7  the Websites, organized as three "Counts" against Price by each Plaintiff- Tortious
8  Interference with Business Relationships (Complaint, ¶¶ 47-55), Intentional
9  Infliction of Emotional Distress (*id*. ¶¶ 56-65), and Injunctive Relief (*id*. ¶¶ 66-70).
10 The Websites were first registered and published by Price in early 2016. Complaint
11 at Ex. A, p 26:9-13, 33:16-25.  The Websites were set up with an automated process
12 that would re-post the content published thereon. *Id*. at 44:16-46:12.

13   Upon filing the Complaint, Plaintiffs sought a preliminary injunction against
14 Price, which was denied by the Court. Dkt. No. 4. The court denied the motion, for
15 "at least six reasons" including that Plaintiffs failed to demonstrate a likelihood of
16 success on their claims, which arose out of the publication of allegedly
17 "defamatory" and "untrue" content on the Websites, which "mostly re-publish news
18 articles from the Australian media" about the "tumultuous history between the Kazal
19 brothers and David." Dkt. No. 4 at 1, 6, 11.  Despite the denial of the preliminary
20 injunction, by January 12, 2018 Price caused the Websites to go into "maintenance
21 mode", which made them stop showing any content apart from indicating the site "is
22 currently undergoing scheduled maintenance." Gebelin Decl. ¶ 9, Exs. 5, 6.

23   In October 2018, the parties stipulated to a transfer of the matter to the
24 Central District of California, as it was the location where the websites at issue
25 "were created" and would be convenient for discovery and the majority of
26 witnesses. Dkt. No. 34. On January 16, 2019, Plaintiffs filed their motion for leave
27 to file an amended complaint. Dkt. No. 46. Other than adding jurisdictional facts
28 about the New Defendants (FAC at ¶¶ 25-27) and amending factual allegations

formerly made against Price alone to be against Price and the New Defendants (*e.g. id*. at ¶¶ 35-43), the Proposed Amended Complaint apparently makes no substantive changes to the facts or claims alleged. *Compare* Dkt. Nos. 1 and 46-3.

## III.   Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that, if a responsive pleading has already been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." "The district court may decline to grant such leave, though, where there is 'any apparent or declared reason' for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991) (emphasis omitted). Where a proposed amendment's "claims are barred by the statute of limitations," such amendment is futile and leave should be denied. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) (citing *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir.1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal ...").

## IV.   Argument

### A.   Plaintiffs' Claims Are Subject to a One Year Statute of Limitation.

California's Civil Code section 3425.3 provides: [¶] "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy *or any other tort* founded upon any single publication or exhibition or utterance, such as any one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." (Emphasis added.)

Where "the *harm* (damage) allegedly sustained by" Plaintiffs "is the same as that which could be caused by '*libel or slander or invasion of privacy,*'" Civil Code

section 3425.3 applies to all tort causes of action "based on the *contents* of the *mass publication* of an article" and the one-year statute of limitations for libel or slander. *Strick v. Superior Court*, 143 Cal. App. 3d 916, 925 (Ct. App. 1983) (because "the requisite elements of the 'tort'," alleged by Plaintiff "includes 'resulting damage'— [harm], proof of which is *inextricably linked* to the entire *contents* of the m*ass communication*" allowing "plaintiffs to pursue an independent tort claim based on fraud and deceit, the proof of a requisite element (damage)—[harm] which must resort to the *contents* of the same allegedly mass communicated libelous article would nullify the clear language and applicability of section 3425.3, in contravention of legislative policy concerning mass communications as enunciated by the Legislature by enacting the Uniform Single Publication Act.")

Here, Plaintiffs' claims (as existing and as proposed against the New Defendants) all arise from one or more "mass publication" Price placed on the Websites prior to the filing of the complaint in December 2017. *Compare, e.g.* Complaint [Dkt. No. 1 - filed December 7, 2017]; and Proposed First Amended Complaint [Dkt. No. 46-3] ("FAC") at ¶¶ 1 ("[Price/Defendants] accomplished this purpose by creating, maintaining, and publicizing five websites on which [Price/Defendants] posted incendiary, false, and misleading information about Plaintiffs");  48/50 (Tortious Interference claim based on alleged "publication of untrue, disparaging, and highly offensive information  on [Price's/Defendants'] Websites"); 50/52 ("Through the publication of the disparaging, false and vilifying statements on the Websites, without justification or privilege, [Price has/Defendants have] intentionally and unjustifiably interfered with, and still is intentionally and unjustifiably interfering with, the business relationships of the Kazal Brothers"); 57/58 (Intentional Infliction of Emotional Distress based on allegation that "[Defendant Price/Defendants] acted intentionally, or in the alternative recklessly, when [he/they] published false and disparaging statements as described above in order to inflict mental distress on the Kazal Brothers); 67 (Request for Injunctive

relief based on allegation that "[Defendant has/Defendants have] repeatedly and wrongly made false statements through the Websites, intentionally inflicted emotional distress on Plaintiffs and their family members, and interfered with Plaintiffs' ongoing business relationships to the significant financial detriment of the Kazal family.") As such, and in accordance with prior findings of the Court in this matter that "the crux of the plaintiffs' claims is defamation" (*e.g.* Dkt. No. 4 at 6), the statute of limitations applicable to each and every one of Plaintiffs' claims is the one year statute of limitations for defamation. *See, e.g.* Cal. Code of Civil Procedure § 340(c).

B. Plaintiffs' Claims Do Not Relate Back and Are Time Barred.

Rule 15(c)(1)(C) provides the federal standard for whether a pleading relates back. *See Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010) ("Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations."). In order for an amended complaint to relate back under Rule 15(c)(1)(C), the following conditions must be met: "(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). Additionally, the second and third requirements must have been fulfilled within 90 days after the original complaint is filed, as prescribed by Federal Rule of Civil Procedure 4(m). Fed. R. Civ. P. 15(c)(1)(C) and 4(m); *see also Boss v. City of Mesa*, 746 F. App'x 692, 694 (9th Cir. 2018) (claims against defendants added in amendment filed more than 90 days after prior complaint was filed do not "relate back.")

Here, the Complaint was filed on December 7, 2017. For an amendment to relate back, Plaintiffs were required to file the amendment within 90 days of the

complaint. Instead, they filed the motion to amend more than thirteen months after filing the complaint, preventing relation back of the claims. Nor are there facts that Plaintiffs could offer to show that the other factors for relation back are met.

Nor can Plaintiffs plead any facts that would bring their claims within the statute of limitations, as the Websites' content was removed more than a year prior to Plaintiff's motion to amend. Gebelin Decl. ¶ 9. There was no mistake by Plaintiffs- they knew of (and even sued upon) claims related to the content on the Websites in 2016, including naming Thunder Studios, the employer of the New Defendants, in their prior action. Gebelin Decl. ¶ 2. Indeed, Thunder Studios was even mentioned in the original complaint in this action. *See* Complaint at ¶¶ 20, 21. Plaintiffs did not name any "Doe Defendants" in this action (not that it would allow for a relation back) and apparently chose not to sue any other person in this action (or even in a California action) over the Websites within the statute of limitations.

As set forth in Plaintiffs' Complaint, the allegedly defamatory remarks were first published by Price in 2016. Complaint at Ex. A, p 26:9-13, 33:16-25. Plaintiffs first sued Price, Wells, David, and Thunder Studios over claims arising from the Websites in 2016. Gebelin Decl. ¶ 2. The publications at issue were published prior to the filing of the Complaint. *See generally*, Complaint. In any event, all content was removed from the Websites more than a year before Plaintiffs filed their motion to amend. Gebelin Decl. ¶ 9. As such, the claims against the New Defendants are all time barred under the applicable statute of limitations, and amendment would be futile.

C.   Plaintiffs' Claims Are Also a Meritless SLAPP.

"To determine whether a lawsuit or cause of action should be disposed of as a SLAPP suit, section 425.16 establishes a two-part test. Under the first part, the party bringing the anti-SLAPP motion has the initial burden of showing that the lawsuit, or a cause of action in the lawsuit, arises from an act in furtherance of the right of free speech or petition—i.e., that it arises from a protected activity. Once the

defendant has met its burden, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the lawsuit or on the cause of action. Only a cause of action that satisfies both parts of the anti-SLAPP statute—*i.e.*, that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal.App.4th 133, 142 (2011) (citations omitted).

**Prong 1**: "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002). "A cause of action arises from protected activity within the meaning of section 425.16, subdivision (e)(4) if the plaintiff's claims are predicated on conduct that is: (1) in furtherance of the right of free speech, and (2) in connection with a public issue or issue of public interest." *Hunter v. CBS Broad., Inc.*, 221 Cal. App. 4th 1510, 1520, 165 Cal. Rptr. 3d 123, 131 (2013). As "the crux of the plaintiffs' claims is defamation" from online posts, the claims clearly arise from speech on a matter of public interest- the Kazal family. *See, e.g. Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012) (finding statements posted to internet about plaintiff's "character and business practices," especially in the context of warnings to other potential customers, were subject to SLAPP); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 694 (2012) (Internet message board comments, disparaging the bank's management decisions and financial stability, related to "an issue of public interest" within protection of anti-SLAPP statute); *Wilbanks v. Wolk*, 121 Cal.App.4th 883, 895 (2004) (statements published on defendant's website "hardly could be more public").

An " 'issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested."* *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original). In *Nygard*, the Court of Appeal concluded that, based on "evidence introduced by

defendants in support of their motions to strike, there is 'extensive interest' in Nygård—'a prominent businessman and celebrity of Finnish extraction'—among the Finnish public," such that the provision of information for news articles about Nygard's personal home in the Bahamas fell within the public interest. *Id*.

Plaintiffs admit the Kazals are a "prominent Australian family" persons. Complaint ¶ 1. As previously recognized by the Court, Plaintiffs and the Kazal family are the subject of substantial media coverage in Australia. Dkt. No. 4; *see also* Gebelin Decl. ¶¶ 11-20, Exs. 7-19; *Nygard,* 159 Cal. App. 4th at 1042. Additionally, Plaintiff and the Kazals made themselves into topics of public concern through their publishing via Twitter and KazalFamilyStory.com. Gebelin Decl. ¶¶ 21, Ex. 20; *see, e.g. see also Gilbert v. Sykes*, 147 C.A.4th 13, 24 (2007) (surgeon prominent as expert in and advocate for plastic surgery was limited public figure).

**Prong 2**: Each of Plaintiffs' claims are based on allegedly defamatory statements appearing on the Websites. Thus, Plaintiffs much show the elements of a defamation claim, to wit: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010). Moreover, public figures[4] must "prove by clear and convincing evidence that an allegedly defamatory statement was made with knowledge of falsity or reckless disregard for truth." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005).

Here, each of the Websites participated in ongoing public conversations regarding the Kazal Family (a public conversation fueled in no small part by the Kazals' own website and publications) by circulating and republishing third party

---

[4] In "order to characterize a plaintiff as a limited purpose public figure" the following elements must exist: (1) "there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants"; (2) "the plaintiff must have undertaken some voluntary act through which he or she sought to influence resolution of the public issue"; and (3) "the alleged defamation must be germane to the plaintiff's participation in the controversy." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569), 1577 (2005); *see also Gilbert v. Sykes*, 147 C.A.4th 13, 24 (2007) (surgeon prominent as expert in and advocate for plastic surgery was limited public figure).

stories and reports regarding the Kazals by copying portions of the third party sources and linking to the originals.  *See, e.g.* Gebelin Decl. ¶¶ 10-14, Exs. 7-10. For example, CharifKazal.com is topped by the "Kazal Brothers" graphic from the Sydney Morning Herald that identifies eight of the Kazals, along with their dozens of known aliases and former names, their ages, and their pictures.  *Id*. Ex. 7.  As another example, a March 2017 post to CharifKazal.com copied text from a December 8, 2016 Sydney Morning Herald article regarding the contempt charges against Adam Kazal and provided a link to the original newspaper article at the Sydney Morning Herald website.  *Id*. ¶ 8, Exs. 7, 11.  CharifKazal.com's next post pulls a quote from Australian Parliamentary debates regarding the Kazals and their questionable leases, along with a link to the underlying source.  *Id*. ¶ 14, Ex. 7.

At a minimum, the posts linking to the underlying third party sources for the information contained therein demonstrate that the posts were made without malice, and therefore each of the claims must fail.  *See, e.g. Cabrera v. Alam*, 197 Cal.App.4th 1077, 1092 (2011) (past president of homeowners association, who campaigned against candidate for board of directors was public figure; defamation claim stricken under anti-SLAPP for lack of proof that statements were made knowledge, or reckless disregard, of the falsity of the statements).  Amendment would further be futile because the claims are meritless.

## V.   Conclusion

Plaintiffs' claims against the New Defendants are both a meritless SLAPP and time barred.  Amendment would be futile and leave to amend should be denied.

DATED: February 4, 2019         Respectfully submitted,

**SYVERSON, LESOWITZ & GEBELIN LLP**

By: _____

STEVEN T. GEBELIN
Attorneys for Defendant Matthew Price