STEVEN T. GEBELIN (SBN 261507)
steven@lawbylg.com
LESOWITZ GEBELIN LLP
8383 Wilshire Blvd., Suite 520
Beverly Hills, CA 90211
Telephone: (310) 341-3072
Facsimile:  (310) 341-3070

Attorneys for Defendant Matthew Price

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISON

| | |
|---|---|
| CHARIF KAZAL, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW PRICE, *et al.* <br> Defendants. | **CASE NO.: 2:18-cv-08655 JWH-E** <br> Transferred from M.D. Florida: Oct. 11, 2018 <br><br> **DECLARATION OF MATTHEW PRICE IN SUPPORT OF DEFENDANT'S SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT** |

I, Matthew Price, declare under penalty of perjury as follows:

1. I am a defendant in the above captioned case. I am submitting this declaration in support of Defendant's Special Motion to Strike Plaintiffs' First Amended Complaint. Except as otherwise stated, I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could and would competently testify thereto.

2. I met Rodric David through shared acquaintances, and subsequently learned of issues that he was having with outrageous online statements made about him by the Kazals, who I understand to be former business associates of his. With my background in IT, I understood the internet allows anyone to self-publish anything, and it was clear to me that the Kazals were publishing one-sided news in an attempt to damage Rodric's online reputation. Rather than pointing to reputable online sources, web searches for Rodric would lead to the unbalanced web content like that being produced by the Kazals, which did not seem to match the man I knew. After my review of some independent sources, I thought it was unfair that Rodric was the subject of such a one sided attack from the Kazals.

3. I also was aware of ongoing online harassment campaigns waged by the Kazals against Mr. David, as I saw and attempted to curtail a continuous stream of derogatory, viriolic, and (based on my understanding from the third party sources) false attacks on him sent to employees of Mr. David's company Thunder Studios.

4. Using my IT knowledge and some web building skills, in early 2016 (while still living in California) I decided I would publish a handful of web domains that could counter the negative reports being circulated about Rodric. Accordingly, I registered a small number of web domains referencing the Kazals- www.tonykazal.com, www.adamkazal.com, www.charifkazal.coml, www.karlkazal.com, and www.kazalfamilytruth.com (the "Domains").

5. I then set up simple, non-commercial websites on the Domains that would automatically republish content pulled from reputable independent third-party reports that countered the vitriol from the Kazals, specifically those from the well-known Australian newspaper the Sydney Morning Herald and Australian government reports. These websites used a script that would cycle through a set of such articles and reports in order to improve the website's relative position in search engine results.

6. Along with the excerpts, each article would typically include some graphic relating the information from the article, such as copies of a graphic created and originally published by the Sydney Morning Herald showing photographs and information about members of the Kazal family in what appears to be a paperclipped folder:



7.  The registration and set up of these websites on the Kazal.com Domains was entirely my own decision and done on my own initiative. Neither Rodric nor Thunder Studios asked me to do this, nor did they hire or otherwise employ me or in connection with the Domains or the websites occupying them.

8.  Nor did any of my co-Defendants in this action (Ryan Wells, Michael Hatch, and Paul Kolesa) have anything to do with my registration of the Domains or the creation of any content that appeared on them. The registration and publication of content on the Domains was completely my decision and my actions alone.

9.  Although I personally paid for the registration of the Domains, the account that I used to register them was also connected to my company United Technology Group, Inc. ("UTG"), a boutique sized Managed Services Provider in the Information Technology field that I ran in Santa Monica, CA at the time. Because UTG was connected to the registration, certain persons working with or for UTG may have received notices concerning the Domains, including some of the co-Defendants. UTG connected persons may have also performed background systems work for the maintaining the Domains, but only routine work that was in line with maintenance performed for all of the websites UTG hosted on behalf of its clients, such as applying security patches or updating encryption certificates. Again, despite their possible work on behalf of UTG on background systems for the Domains (treating my personal websites as "clients" of UTG), none of the co-Defendants were a part of the selection, creation, or publication of the content appearing on the Domains relating to the Kazals or even the registration of the Domains.

10. To be perfectly clear, I registered each of the domain names www.tonykazal.com, www.adamkazal.com, www.charifkazal.coml, and www.karlkazal.com in order to set up non-commercial websites that would republish articles about the Kazals from journalistic, independent, reputable sources. I believed then (and still believe now) that these websites and their publication was the right thing to do, and they only facilitated the spread of truthful information.

These websites never displayed advertising or contained any other methods for monetization of traffic to the websites. I never intended to make any profit from the use or sale of the domains and have not offered to sell the domains to anyone, including the Kazals. I believe that the use of the Kazals' names is fair, as it serves to associate these people with independent reports about them in counter to statements made by the Kazals against Rodric or others.

11. As part of settlement negotiations in this case, on or before January 18, 2019, I caused each of the domains to stop publishing any of the content at issue in the case, and instead go into "Maintenance Mode." From that day through today, none of the Domains have published **any content** concerning the Plaintiffs.

I declare under penalty of perjury under the laws of the United States and California that the foregoing is true and correct. Executed March 29, 2021 in Tampa, Florida.

MATTHEW PRICE